[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-13562
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 20, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-22962-CV-PCH

ESTATE OF PHILIP SCUTIERI, SR.,
DELPHINE SCUTIERI,
as Personal Representative of the
Estate of Philip Scutieri, Sr.,
PHILIP J. SCUTIERI, JR.,
as Attorney in Fact for
Delphine Scutieri,

Plaintiffs-Appellants,

versus

RAYMOND G. CHAMBERS,
FRANK ADUBATO,
HAMPSHIRE CAPITAL, INC.,
DAVID J. ROY,
KURT BOROWSKY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 20, 2010)

Before EDMONDSON, BIRCH and MARTIN, Circuit Judges.

PER CURIAM:

Before the Court is the district court's dismissal of this action for lack of personal jurisdiction and because the claims were time-barred. Because we agree that the district court lacked personal jurisdiction over the defendants,[1] we AFFIRM.

## I.

Philip Scutieri, Sr. ("Mr. Scutieri") and defendant Raymond Chambers used to be business partners. Prior to his death in 1978, Mr. Scutieri was the sole financial investor in a New Jersey company called Louis Lefkowitz, in which he gave Chambers a 50% interest in exchange for Chambers's commitment to run the company. Defendant Frank Adubato was the record title owner of the remaining 50% interest for the benefit of plaintiff Delphine Scutieri ("Mrs. Scutieri), Mr. Scutieri's widow and the personal representative of his estate.

Mrs. Scutieri alleges that Chambers and Adubato had no intention of managing the company for her benefit, and instead conspired to defraud the Scutieris of their assets. As part of this alleged conspiracy, Chambers merged

---

[1]Despite being named in the style of the case, defendants Hampshire Capital, Inc., David J. Roy, and Kurt Borowsky are not otherwise identified in the Complaint. Like the district court, we limit our analysis to defendants Chambers and Adubato.

Louis Lefkowitz with a separate New Jersey corporation he owned, renaming the new corporation Louis Lefkowitz & Brother. Adubato also owned shares in Louis Lefkowitz & Brother. Chambers then used the assets of the new company to finance the leveraged buyout of yet another company, and to perform other unspecified transactions.

Mrs. Scutieri alleges that Chambers and Adubato "actively concealed" their actions from her and took advantage of her trust and reliance upon them while they conspired to misappropriate the assets of Mr. Scutieri's estate. Specifically, she alleges that Chambers and Adubato failed to inform her of the merger of the two Lefkowitz corporations or the subsequent leveraged buyout, which placed her assets "at great risk." The Complaint alleges that Adubato also converted a piece of real estate belonging to Mr. Scutieri's estate, identified only as "the Hooper property." Although the Complaint does not indicate the location of this property, the district court found it to be in New Jersey.

In 1997, Mrs. Scutieri began to suspect that the defendants had misused the estate assets. Mrs. Scutieri's son, Philip Scutieri, Jr., confronted Chambers and Adubato, who allegedly admitted wrongdoing. Soon after, Chambers sent Mrs. Scutieri a facsimile[2] in which he explained his actions, but omitted "material fact[s]

---

[2]Although the Complaint does not specify, we assume the facsimile was sent to Mrs. Scutieri's home in Florida.

necessary for her to understand that her and the Estate's assets were used to help fund the . . . transactions." Several months later, Chambers sent Mrs. Scutieri a letter to her home in Florida in which she alleges that he misled her "into believing that she did not own a beneficial interest in 50% of the stock in Louis Lefkowitz and that he did not make the Agreement he had made with Scutieri, Sr." Although the Complaint alleges that Chambers flew to Florida a number of times to try and settle the dispute, apparently he has paid Mrs. Scutieri nothing to date.

II.

Mrs. Scutieri is a resident of Florida, and she filed this suit in the U.S. District Court for the Southern District of Florida alleging diversity jurisdiction under 28 U.S.C. § 1332. Both defendants are residents of New Jersey, and they argue that Florida courts lack personal jurisdiction over them. The district court agreed with the defendants and dismissed the case. We review *de novo* the district court's dismissal for lack of personal jurisdiction. Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A., 421 F.3d 1162, 1166 (11th Cir. 2005).

In order to assess whether federal courts sitting in diversity have personal jurisdiction over defendants, we follow a two-step inquiry. Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 626 (11th Cir. 1996). First, we ask whether the

4

forum state's long-arm statute extends to the defendants.[3]  Id.; Horizon, 421 F.3d at 1166.  Second, we examine whether the exercise of jurisdiction comports with the constitutional requirements of due process, "which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend 'traditional notions of fair play and substantial justice.'"  Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1319 (11th Cir. 2004) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)).  Because we conclude that Florida's long-arm statute does not extend to the defendants' conduct as alleged in the Complaint, we need not evaluate the due process implications.

Mrs. Scutieri alleges that Chambers and Adubato conspired to conceal evidence and prevent the Plaintiffs from having an evidentiary basis for suing; breached their fiduciary duty; and aided and abetted the breach of fiduciary duty.[4] We discuss the conspiracy count first, followed by the counts alleging breach of fiduciary duty.

---

[3]The construction and application of Florida's long-arm statute is a question of Florida law, so we construe the long-arm statute as would the Florida Supreme Court.  Horizon, 421 F.3d at 1166–67.

[4]The Complaint originally contained nine counts, but Mrs. Scutieri voluntarily dismissed six.  Because the conspiracy count consisted of claims of conspiracy to commit various torts that were voluntarily dismissed, the only remaining tort that the defendants are alleged to have conspired to commit is that of concealing evidence.

5

A.

Florida courts have jurisdiction over all persons, regardless of whether they are citizens of Florida, who "commit[] a tortious act within [Florida]." Fla. Stat. § 48.193(1)(b). Florida courts do not recognize civil conspiracy as an independent tort,[5] as "the sufficiency of a complaint in such cases is to be determined by the otherwise tortious character of the acts alleged." Snipes v. W. Flagler Kennel Club, Inc., 105 So. 2d 164, 165 (Fla. 1958). While civil conspiracy may be actionable as a dependent tort, "[t]he gist of a civil action for conspiracy is not the conspiracy itself, but the civil wrong which is done pursuant to the conspiracy and which results in damage to the plaintiff." Liappas v. Augoustis, 47 So. 2d 582, 582 (Fla. 1950). Under this analysis, if there is no underlying tort, there can be no conspiracy to commit the tort. See id.

The Complaint alleges that the defendants conspired to cover up their wrongful acts, as evidenced by two written communications from Chambers to Mrs. Scutieri at her home in Florida in 1997 and 1998. The allegation is that Chambers made misrepresentations in both of these letters in furtherance of the

---

[5]There is a very narrow exception to this rule, where "the mere force of numbers, . . . or other exceptional circumstances, gives rise to an independent wrong." Liappas v. Augoustis, 47 So. 2d 582, 583 (Fla. 1950); see also Snipes v. W. Flagler Kennel Club, Inc., 105 So. 2d 164, 166–67 (Fla. 1958); Curruca v. Miami Jai-Alai, Inc., 353 So. 2d 547, 550 (Fla. 1977) (to allege civil conspiracy under this exception, the plaintiffs must allege "a malicious motive and coercion through numbers or economic influence").

fraudulent scheme. Mrs. Scutieri argues that the letters alone could form the basis of personal jurisdiction for the co-conspirators.[6]

It is true that physical presence is not a prerequisite for committing a tort in Florida, as the tort can be accomplished "by making telephonic, electronic, or written communications into this State, provided that the tort alleged arises from such communications." Wendt v. Horowitz, 822 So. 2d 1252, 1253 (Fla. 2002). This "connexity requirement" for torts committed out of state requires courts to ask first whether the complaint states a cause of action, and if so, whether the cause of action arises from the out-of-state communications into Florida. Id. at 1260; see also Horizon, 421 F.3d at 1168–69 (finding "connexity" where a company's agent made purposefully misleading statements over the telephone to a client in Florida, amounting to "constructive fraud"); Acquadro v. Bergeron, 851 So. 2d 665, 670 (Fla. 2003) (finding "connexity" where the out-of-state defendant defamed the

---

[6]The only other allegations that relate in any way to Florida are that (1) Adubato caused Mr. Scutieri's will to be admitted to probate in Miami-Dade County, Florida, and (2) Chambers flew to Florida several times to meet with Mrs. Scutieri about the dispute. However, the Complaint does not provide any further information connecting either of these allegations to the defendants' purported conspiracy to "withhold[] the production of relevant documents and information." Ms. Scutieri has therefore failed to explain how these allegations support the exercise of personal jurisdiction. See Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389, 394 (11th Cir. 1988) ("For personal jurisdiction to attach under the 'tortious activity' provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant 'committed a substantial aspect of the alleged tort in Florida,'" such as "by establishing that the activities in Florida 'w[ere] essential to the success of the tort.'" (quoting Watts v. Haun, 393 So. 2d 54, 56 (Fla. 2d DCA 1981))).

7

plaintiff in a phone call to a person in Florida).

The underlying tort alleged in the conspiracy count is that the defendants concealed evidence and prevented Mrs. Scutieri from having enough evidence to sue them. The plaintiffs have not pointed us to, nor are we otherwise aware of, any Florida statute or case establishing that concealing evidence is a tort in Florida.[7] See Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co., 165 F. Supp. 2d 1345, 1360 (S.D. Fla. 2001) (concluding that "'concealment' of evidence is not actionable under Florida law"), aff'd sub nom. Green Leaf Nursery v. E.I. DuPont De Nemours & Co., 341 F.3d 1292, 1308–09 (11th Cir. 2003). While out-of-state communications can be sufficient to trigger Florida's long-arm statute, "the cause of action must arise from the communications." Wendt, 822 So. 2d at 1260. Implicit in Mrs. Scutieri's assertions that the communications were in furtherance of a larger fraudulent scheme, is the fact that the fraudulent scheme had already been established elsewhere. Cf. Acquadro, 851 So. 2d at 670 (finding personal jurisdiction in a defamation suit because the telephone call during which the defamation occurred gave rise to the tort). Because the letters allegedly sent to Mrs. Scutieri did not give rise to the cause of action, the letters are insufficient to

---

[7]At a district court hearing on the defendants' motion to dismiss, Mrs. Scutieri's attorney stated that the underlying tort for the conspiracy charge is "continuing breach of fiduciary duty owed to the Scutieri family." However, this was not alleged in the conspiracy count in the Complaint.

establish jurisdiction so as to hale Chambers and Adubato into a Florida federal court for the conspiracy charge.

B.

The two final counts allege that the defendants breached their fiduciary duty to Mrs. Scutieri and that they aided and abetted the breach of fiduciary duty. The gist of these claims is that the defendants "(1) engag[ed] in the fraudulent scheme described [in the Complaint] and self-dealing, (2) fail[ed] to inform Mrs. Scutieri of the merger of Louis Lefkowitz with HAC Corp., (3) dilut[ed] Mrs. Scutieri's beneficial ownership interest in the company, and (4) plac[ed] the assets of Louis Lefkowitz at great risk without Mrs. Scutieri's knowledge or consent."

The Florida Supreme Court has provided only limited guidance on the question of when a tort committed out of state but causing injury in Florida is sufficient to give Florida courts personal jurisdiction over the tortfeasor. See Wendt, 822 So. 2d at 1253 n.2 ("We do not decide the broader issue of whether injury alone satisfies the requirement of [the long-arm statute], as that issue is not the basis for this Court's jurisdiction."). Although Florida's intermediate appellate courts are divided on the issue, we have consistently held that an out-of-state tort resulting in injury in Florida subjects the actor to jurisdiction under Florida's long-arm statute. E.g., Posner v. Essex Ins. Co., 178 F.3d 1209, 1216 (11th Cir. 1999);

9

Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 257 (11th Cir. 1996); Sun Bank, N.A. v. E.F. Hutton & Co., 926 F.2d 1030, 1033–34 (11th Cir. 1991). Unless and until the Florida Supreme Court rejects our construction of the long-arm statute, we are bound to follow our "firmly established precedent, which interprets subsection (1)(b) to apply to defendants committing tortious acts outside the state that cause injury in Florida." Posner, 178 F.3d at 1217.

Despite our broad reading of subsection 48.193(1)(b), we do not recognize "personal jurisdiction pursuant to an allegation of injury to the business interest of a Florida plaintiff where that interest is located entirely outside of Florida." Id. at 1220. Because the breach of fiduciary duty alleged here involves Chambers's and Adubato's actions as to Lefkowitz, a New Jersey corporation, the fact that Mrs. Scutieri lived in Florida when she was injured is an insufficient forum-state injury to trigger the long-arm statute.

In fact, it is not clear from the Complaint whether Mrs. Scutieri was injured at all by the defendants' actions. The Complaint only states that she has suffered damages. When pressed to be specific about her injuries at a hearing before the district court, Mrs. Scutieri's counsel gave the following circular response: "[t]he injury that was sustained is the injury that was created by the continuing obligation on the part of [Mrs. Scutieri's] fiduciaries to disclose to her the material facts that

10

deal with her interest."

We agree with the district court that the Complaint fails to allege any actual damages. Even given this Court's generous reading of section 48.193(1)(b), which allows personal jurisdiction over a defendant where an out-of-state tort produces an injury in Florida, Mrs. Scutieri must still plead facts demonstrating a cognizable injury in Florida.

It is her position that the district court was obliged to credit the plaintiffs' claim that there were damages. However, "[a] plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient *facts* to make out a prima facie case of jurisdiction." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009) (emphasis added). In Posner, for example, we rejected the plaintiff's bare legal conclusion that a conspiracy existed, finding that the complaint's vague allegations were insufficient to establish an actionable conspiracy subjecting the defendant to personal jurisdiction. See Posner, 178 F.3d at 1217–18. It logically follows that where, as here, plaintiffs rely on a forum-state injury as the basis for personal jurisdiction over defendants' out-of-state torts, the complaint must allege sufficient facts to support the legal conclusion that the plaintiffs suffered damages.

Mrs. Scutieri has alleged that the defendants' actions caused injury without

11

pleading any facts to support the conclusion that she suffered real damage, other than to say that the defendants lied to her. While she claims that they schemed to misappropriate both her assets and the assets of the Estate, she has not pleaded facts sufficient to show detrimental reliance, financial loss, or anything else beyond her conclusion that she was harmed by the alleged scheme. She claims that Adubato converted the New Jersey "Hooper property," but as stated above Mrs. Scutieri's out-of-state business interests cannot form the basis of a forum-state injury. Without injury in Florida, there is no personal jurisdiction over the alleged torts that occurred outside of Florida.

While we also question whether Mrs. Scutieri's claims are viable under the statute of limitations, we need not decide this issue because the district court lacked personal jurisdiction to hear this case. The judgment of the district court is AFFIRMED.