[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-11689
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-23766-KMW

DAVID SCHULMAN,
as personal representative of the Estate of Casey Schulman, deceased,

Plaintiff - Appellant,

versus

INSTITUTE FOR SHIPBOARD EDUCATION,
d.b.a. Semester at Sea,

Defendant,

ANCHORAGE HOTEL LTD,
GLOBAL CITIZENS TRAVEL LLC,
FOUNTAINE-PAJOT,
a foreign company,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____
(August 18, 2015)

Before TJOFLAT, WILSON and WILLIAM PRYOR, Circuit Judges.

PER CURIAM:

This appeal requires us to decide whether the district court had general personal jurisdiction over Fountaine-Pajot, S.A., a French company that manufactures catamaran vessels. After Casey Schulman died in a boating accident while visiting the island of Dominica, the personal representative of his estate brought strict liability and negligence claims against Fountaine-Pajot in the Southern District of Florida. Fountaine-Pajot moved to dismiss the complaint for lack of personal jurisdiction, and the district court granted that motion after allowing the parties to take jurisdictional discovery. Because Fountaine-Pajot's activities in Florida and the United States are not "so 'continuous and systematic' as to render [it] essentially at home" in either jurisdiction, *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ____, 131 S. Ct. 2846, 2851 (2011) (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 317, 66 S. Ct. 154, 159 (1945)), we affirm.

## I. BACKGROUND

In December 2012, Schulman was killed during a snorkeling excursion near the island of Dominica when the captain of a catamaran manufactured by Fountaine-Pajot started the boat's engines while Schulman was swimming nearby.

2

David Schulman, the personal representative of Schulman's estate, then filed a complaint of strict liability and negligence against Fountaine-Pajot in the Southern District of Florida. Fountaine-Pajot moved to dismiss the complaint for lack of personal jurisdiction. The district court granted Schulman leave to take jurisdictional discovery and later granted Fountaine-Pajot's motion to dismiss.

Fountaine-Pajot is a French corporation that manufactures and sells catamaran vessels in France. Fountaine-Pajot has distribution arrangements with distributors based in Florida and elsewhere in the United States, but these distributors are independent businesses that purchase their vessels in France and market vessels made by other manufacturers as well. Approximately 12% of Fountaine-Pajot's sales between 2008 and 2014 were to distributors based in the United States. Fountaine-Pajot markets its vessels in magazines circulated in the United States, including the Florida-based magazines *South Winds* and *Florida Mariner*. And Fountaine-Pajot's representatives have attended boat shows in the United States, including the Miami International Boat Show. Fountaine-Pajot has an agreement with CGI Financing, Inc., a Maryland-based financing company, to help dealers and buyers in the United States finance purchases of their vessels. Fountaine-Pajot has no offices or employees in the United States.

3

## II. STANDARD OF REVIEW

We review *de novo* the decision of a district court to dismiss a complaint for lack of personal jurisdiction. *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010).

## III. DISCUSSION

Schulman argues that the district court had personal jurisdiction over Fountaine-Pajot pursuant to Florida's long-arm statute or, alternatively, Federal Rule of Civil Procedure 4(k)(2). Both arguments fail. We discuss each in turn.

*A. The District Court Lacked Personal Jurisdiction Over Fountaine-Pajot Under the Florida Long-Arm Statute.*

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009). A defendant can be subject to personal jurisdiction under the Florida long-arm statute in two ways: first, section 48.193(1)(a) lists acts that subject a defendant to *specific* personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida, Fla. Stat. § 48.193(1)(a); and second, section 48.193(2) provides that Florida courts may exercise *general* personal jurisdiction— that is, jurisdiction over any claims against a defendant, whether or not they

4

involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida, *id*. § 48.193(2).

Because Schulman does not argue that the events that gave rise to his suit confer specific personal jurisdiction over Fountaine-Pajot, we must consider whether the district court had general jurisdiction over Fountaine-Pajot under section 48.193(2). And "[t]he reach of [section 48.193(2)] extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth Amendment." *Fraser*, 594 F.3d at 846. So, to determine whether the district court had general jurisdiction over Fountaine-Pajot under section 48.193(2), we "need only determine whether the district court's exercise of jurisdiction over [Fountaine-Pajot] would exceed constitutional bounds." *Id.*

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations," without offending due process "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (quoting *Int'l Shoe Co.*, 326 U.S. at 317, 66 S. Ct. at 159). The Supreme Court has explained that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business" will be "so substantial and of such a nature as to render the corporation at home in that State" only in "exceptional" cases. *Daimler AG v.*

5

*Bauman*, 571 U.S. ____, 134 S. Ct. 746, 761 n.19 (2014). Accordingly, "[a] foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015).

Fountaine-Pajot's few connections with Florida fail to satisfy the demanding standard of the Fourteenth Amendment. Fountaine-Pajot's connections with Florida are limited to distribution agreements with dealers based there, marketing efforts, and attendance at a trade show. These connections are far less substantial than those the Supreme Court has rejected as insufficient for general personal jurisdiction. In *Daimler AG*, the Supreme Court held that California courts could not exercise general personal jurisdiction over a German company with a wholly owned subsidiary that did business in California, even though the subsidiary served as the parent's exclusive importer and distributor in the United States and was the largest supplier of luxury vehicles to the California market, and even if the subsidiary's contacts with California were imputable to the parent. 134 S. Ct. at 752. Fountaine-Pajot has no subsidiaries based in Florida. And Fountaine-Pajot's marketing efforts and attendance at a Florida trade show, even when coupled with

6

its sales to Florida dealers, do not render it "essentially at home," *Goodyear*, 131 S. Ct. at 2851 (quoting *Int'l Shoe Co.*, 326 U.S. at 317, 66 S. Ct. at 159), in Florida. *See Fraser*, 594 F.3d at 844–46 (holding that Florida courts could not exercise general personal jurisdiction over foreign company even though the company engaged in marketing activities in Florida, procured liability insurance through a Florida insurance agent, purchased about half of its boats in Florida, and sent employees and representatives to Florida for training). Fountaine-Pajot's activities in Florida do not "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business," *Carmouche*, 789 F.3d at 1205, so it cannot be subject to general personal jurisdiction there.

### B. The District Court Lacked Personal Jurisdiction Over Fountaine-Pajot Under Rule 4(k)(2).

Schulman argues, in the alternative, that the district court had general personal jurisdiction over Fountaine-Pajot under Rule 4(k)(2) and the Fifth Amendment, because his claims arise under federal maritime law and Fountaine-Pajot's contacts with the United States are sufficient to subject it to general personal jurisdiction in federal court. "[I]n cases where a defendant is not amenable to the jurisdiction of any state's courts of general jurisdiction, Rule 4(k)(2) [of the Federal Rules of Civil Procedure] allows a federal district court to exercise personal jurisdiction over a foreign defendant when (1) the claim at issue

7

arises under federal law, and (2) exercising jurisdiction is consistent with the Constitution and laws of the United States." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 (11th Cir. 2009). "[W]here a federal court invokes Rule 4(k)(2), the applicable forum for the minimum contacts analysis is the United States." *Id.* at 1220 (internal quotation marks and citation omitted). Schulman's argument fails.

The district court lacked general personal jurisdiction over Fountaine-Pajot under the Fifth Amendment. Because "the language and policy considerations of the Due Process Clauses of the Fifth and Fourteenth Amendments are virtually identical, decisions interpreting the Fourteenth Amendment's Due Process Clause guide us in determining what due process requires in the Fifth Amendment jurisdictional context." *Id.* at 1224 n.25. Fountaine-Pajot's connections with the United States are not "so 'continuous and systematic' as to render [it] essentially at home" here. *Goodyear*, 131 S. Ct. at 2851 (quoting *Int'l Shoe Co.*, 326 U.S. at 317, 66 S. Ct. at 159). In addition to its connections with Florida discussed above, Fountaine-Pajot's connections with the United States are limited to sales to dealers in the United States and an agreement with a Maryland-based financing company to help dealers and buyers in the United States finance purchases of their vessels. These ordinary business activities are far from atypical for foreign corporations.

8

Fountaine-Pajot's connections with the United States are not "so substantial" as to make this one of those "exceptional" cases in which a foreign corporation is "essentially at home" in a forum other than its place of incorporation or principal place of business. *Daimler AG*, 134 S. Ct. at 761 n.19.

## IV. CONCLUSION

We **AFFIRM** the district court's dismissal of Schulman's complaint for lack of personal jurisdiction.