**BTG PATENT HOLDINGS, LLC, Plaintiff,**

v.

**BAG2GO, GMBH; Jan Reh; Rimowa Distribution, Inc.; and Rimowa, Inc., Defendants.**

**Case No. 15-22833-CIV-WILLIAMS**

United States District Court, S.D. Florida.

Signed June 8, 2016

Filed June 9, 2016

Jorge Tadeo Espinosa, Francesca Russo-Di Staulo, William Rafael Trueba, Jr., Espinosa Trueba, PL, Miami, FL, for Plaintiff.

Dale C. Kerester, Lynch, Brewer, Hoffman & Fink, LLP, Boston, MA, Joseph A. Demaria, Fox Rothschild LLP, Miami, FL, for Defendants.

## ORDER

KATHLEEN M. WILLIAMS,
UNITED STATES DISTRICT JUDGE

**THIS MATTER** is before the Court on Defendants' motion to dismiss (DE 24), to which Plaintiff responded (DE 27) and Defendants replied (DE 28). Plaintiff BTG Patent Holdings, LLC ("BTG") brought this case against all Defendants—Bag2Go, GmbH ("Bag2Go"), Reh, Rimowa Distribution, Inc. ("RD"), and Rimowa, Inc. ("Rimowa US")—for trademark infringement

and unfair competition under the Lanham Act and common law. (DE 1). Bag2Go and Reh argue that dismissal is appropriate because this Court lacks personal jurisdiction. For reasons discussed below, the Court grants Bag2Go and Reh's motion to dismiss. The remaining defendants, RD and Rimowa US (collectively, the "Rimowa Defendants") argue for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) because BTG's Complaint fails to state a claim. For the reasons discussed below, the Court denies Rimowa Defendants' motion.

## I. BACKGROUND

BTG Patent Holdings, LLC ("BTG") owns and licenses the rights to trademarks for luggage and travel-related services such as baggage delivery. (DE 1 ¶¶ 9-16). Although BTG operates through licensees in Florida airports, ports, and malls, it is a limited liability company organized and existing under the laws of Nevada. (DE 1 ¶¶ 4, 9-14). BTG's predecessor-in-interest and now-CEO Keith Wiater began using the "BAGS TO GO" mark (the "BTG Mark") in 1998 in connection with baggage delivery services for the airline industry. (DE 1 ¶ 17). Since May 2011, BTG's licensees have sold travel bags bearing the BTG Mark, to which BTG owns the rights through several registered trademarks. (DE 1 ¶¶ 18-20).

Bag2Go and its CEO, Reh, are citizens of Germany. (DE 1 ¶¶ 5-6). Although Bag2Go and Reh never sold an infringing product in the United States, they did promote an allegedly infringing mark—"BAG2GO" (the "BAG2GO Mark")—and indicated to BTG that they were planning to launch competing products. Specifically, Bag2Go filed a trademark application for the BAG2GO Mark (DE 1 ¶ 27), announced "that it was ready for the BAG2Go launch" (DE 1 ¶ 34) and later announced the "imminent launch of an actual product bearing the infringing mark" (DE 1 ¶ 37). Bag2Go and Reh then appeared at the Future Travel Experience Global 2015 trade show in Las Vegas, Nevada, during the week of September 10, 2015.[1] (DE 27-22 ¶ 19). According to Keith Wiater's declaration dated October 19, 2015, Bag2Go and Reh were at this trade show displaying their new luggage and baggage tracking service. (DE 27-22 ¶ 19). Finally, BTG asserts that Defendants Bag2Go and Reh, either on their own or through Rimowa Defendants, advertised an infringing product on social media that reaches the United States. (DE 27 at 11-12, 16).

Rimowa Defendants, Delaware corporations maintaining offices in Miami, also never sold infringing products in the United States, but instead promoted and planned to use the BAG2GO Mark. (DE 1 ¶¶ 7-8, 25, 38). For example, at an unspecified time, Rimowa Defendants and Airbus issued a press release about their intent to collaborate and produce a luggage product that uses the BAG2GO Mark. (DE 1 ¶ 25). Rimowa Defendants are also "producing co-branded luggage with both the Rimowa and BAG2GO trademarks" and "RD will be distributing these products in the US." (DE 1 ¶ 38).

On these facts, BTG alleges that Defendants' use of the BAG2GO Mark, without BTG's consent, is likely to confuse consumers in a manner that harms BTG. (DE 1 ¶¶ 39-43). As such, BTG has sued all Defendants for direct and contributory trademark infringement under the Lanham Act, 15 U.S.C. § 1114, (Count I) and common

---

1. During the trade show, both Bag2Go and Reh were served with process in a parallel lawsuit—alleging the same causes of action and arising out of the same operative facts presented here—filed in the District of Nevada. (DE 22); *see also BTG Patent Holdings, LLC v. Bag2Go, GmbH*, No. 2:15-cv-01736-KJD-CWH, DE 7-8 (D.Nev.).

law (Count II); and unfair competition under the Lanham Act, 15 U.S.C. § 1125(a), (Count III) and common law (Count IV). (DE 1).

## II. LEGAL STANDARD

### A. Motion to Dismiss for Lack of Personal Jurisdiction

■ On a motion to dismiss for lack of personal jurisdiction, the Court accepts as true all allegations in the complaint and determines whether the plaintiff has met his burden of establishing a *prima facie* case of personal jurisdiction. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006) (citations omitted). A prima facie case is established if the plaintiff puts forth enough evidence to withstand a motion for a directed verdict. *Id.* (citation omitted). If a defendant challenges jurisdiction by submitting affidavits contradicting the complaint's allegations, the burden shifts to the plaintiff to produce evidence supporting personal jurisdiction. *Id.* When the plaintiff's complaint and supporting affidavits and evidence conflict with the defendant's affidavits, the Court construes all reasonable inferences in the plaintiff's favor. *Id.*

■ The Court engages in a two-part analysis to determine if it may exercise jurisdiction over a non-resident defendant.[2] *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir.2013) (citing *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1319 (11th Cir.2004)); *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 Fed.Appx. 623, 626 (11th Cir. 2010) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir.2009)); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir.

1990) (citations omitted). First, the Court determines whether the defendant's activities satisfy Florida's long-arm statute. *See Mosseri*, 736 F.3d at 1350. Second, the Court determines whether the exercise of jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Id.* at 1350–51.

■ If the defendant is not a citizen of the United States, the Court may also examine personal jurisdiction by a similar but distinct two-part analysis. When "a defendant is not amenable to the jurisdiction of any state's courts of general jurisdiction, Rule 4(k)(2) allows a federal district court to exercise personal jurisdiction over a foreign defendant when (1) the claim at issue arises under federal law, and (2) exercising jurisdiction is consistent with the Constitution and laws of the United States." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1218 (11th Cir. 2009) (footnote and citation omitted).

■ Rule 4(k)(2) permits the exercise of personal jurisdiction over foreign defendants for "claims arising under federal law when the defendant has sufficient contacts with the nation as a whole, but is without sufficient contacts to satisfy the long-arm statute of any particular state." *Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, 197 F.3d 1070, 1074 (11th Cir.1999) (citing *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1543–44 (11th Cir.1997)); *see also Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1293–94 (Fed. Cir.2012) ("Rule 4(k)(2) was adopted to provide a forum of federal claims in situations where a foreign defendant lacks substantial contacts with any single state but has sufficient contacts with the United States as a whole to satisfy due process

---

**2.** In conducting this analysis, "the court may consider all pertinent documentation submitted by the parties in deciding the motion."

*Atmos Nation LLC v. Alibaba Grp. Holding Ltd.*, No. 0:15–CV–62104–KMM, 2016 WL 1028332, at *1 n. 2 (S.D.Fla. Mar. 15, 2016)

standards and justify the application of federal law.").

"[O]ne precondition for applying Rule 4(k)(2) is that the defendant must not be subject to personal jurisdiction in the courts of any state (sometimes called the 'negation requirement')." *Merial Ltd.*, 681 F.3d at 1294 (citation omitted); *see also Henriquez v. El Pais Q'Hubocali.com*, 500 Fed.Appx. 824, 829 (11th Cir.2012) ("Under Rule 4(k)(2), when a defendant is not subject to the jurisdiction of any one state, a court may aggregate a foreign defendant's nationwide contacts.") (internal quotation marks and citation omitted). As another court of this District observed, "[f]or Rule 4(k)(2) to apply, the Court must find that the defendant is not amenable to personal jurisdiction in *any* state's courts of general jurisdiction." *Barrocos of Florida, Inc. v. Elmassian*, No. 11–CV–22393, 2012 WL 1622988, at *6 (S.D.Fla. May 9, 2012) (emphasis in original) (citing *Oldfield*, 558 F.3d at 1218).

## B. Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Court's consideration is limited to the allegations in the complaint. *See GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't. of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir.2010); *see also Roberts v. Fla. Power & Light* Co., 146 F.3d 1305, 1307 (11th Cir.1998). Although a plaintiff need not provide "detailed factual allegations," a plaintiff's complaint must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (internal citations and quotations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* Rule 12(b)(6) does not allow dismissal of a complaint where the court anticipates "actual proof of those facts is improbable" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 545, 127 S.Ct. 1955).

## III. DISCUSSION

### A. Personal Jurisdiction

Because "jurisdictional questions generally should be decided before reaching the merits," and BTG's claims are against all Defendants, the Court first considers Defendants Bag2Go and Reh's motion to dismiss for lack of personal jurisdiction. *Courboin v. Scott*, 596 Fed.Appx. 729, 735 (11th Cir.2014) (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940 (11th Cir.1997); *Madara v. Hall*, 916 F.2d 1510, 1514, 1514 n. 1 (11th Cir.1990)). The Court concludes that it cannot exercise personal jurisdiction over Defendants Bag2Go and Reh under Florida's long-arm statute, the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, or Federal Rule of Civil Procedure 4(k)(2), and grants their motion.

### 1. Florida Long-Arm Statute

To exercise personal jurisdiction over Bag2Go and Reh, the Court must first find that the Defendants' conduct placed them within the reach of Florida's long-arm statute. As the Chief Judge of this District explained in a recent opinion granting a motion to dismiss for lack of personal jurisdiction:

Under Florida's long-arm statute, Fla. Stat. § 48.193, a non-resident defendant can be subject to personal jurisdiction in two ways. First, a Florida court can exercise general personal jurisdiction—that is, jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity" in Florida. *Schulman v. Inst. for Shipboard Educ.*, 624 Fed.Appx. 1002, 1005 (11th Cir.2015). Second, a Florida court can exercise specific personal jurisdiction—that is, jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida—if the claim asserted against the defendant arises from the defendant's contacts with Florida, and those contacts fall within one of nine statutorily enumerated categories set forth in section 48.193(1)(a). *Id.* *Atmos Nation LLC v. Alibaba Grp. Holding Ltd.*, No. 0:15–CV–62104–KMM, 2016 WL 1028332, at *2 (S.D.Fla. Mar. 15, 2016) (Moore, J.). BTG argues that Reh and Bag2Go are subject to both general and specific personal jurisdiction. (DE 27 at 4-11).

■ The general jurisdiction provision of the long-arm statute, Florida Statute § 48.193(2), provides:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

"Florida courts have held this 'substantial and not isolated activity' requirement to mean, and subsume, the 'continuous and systematic general business contacts' standard sufficient to satisfy the due process requirement of minimum contacts for general jurisdiction[.]" *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1275 n. 16 (11th Cir.2009) (quoting *Helicopteros. Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Thus, "if the defendant's activities meet the requirements of section 48.193(2), minimum contacts is also satisfied." *Id.* (quoting *Woods v. Nova Companies Belize Ltd.*, 739 So.2d 617, 620 (Fla.Dist.Ct.App.1999)).

■ Here, as in *Mazer*, there is "little trouble dismissing any contention that [the defendant] is subject to general jurisdiction under Florida's long-arm statute." 556 F.3d at 1275 n. 16. The record does not indicate that Reh and Bag2Go engaged in substantial and not isolated business activities within Florida to satisfy the requirements of § 48.193(2). Indeed, BTG's own argument belies any such activity within Florida, citing attendance at "two national trade shows in Las Vegas," the issuance of "several press releases," and use of "Twitter, Facebook and Instagram." (DE 27 at 21). Furthermore, BTG's allegations regarding activity in the United States focus more on conduct based in Nevada rather than Florida. As set forth in the declaration of William Trueba submitted on behalf of BTG, Defendants promoted the alleged infringing product in Las Vegas, Nevada. (October 19, 2015 Declaration of William R. Trueba, Jr., DE 27-1 ¶ 3, n.). The declaration, like the record as a whole, is silent as to infringing conduct in Florida. Insofar as the BAG2GO Mark was never placed on a bag for sale, the record is clear that no infringing product was ever sold in Florida. (September 25, 2015 Declaration of Jan Reh DE 24-1 ¶ 10: "The electronic bag tag to be produced by Bag2Go, GmbH is not available in the United States and is not being marketed in the United States in any way.").

In addition, RD's Executive Vice President, Thomas Nelson, filed a declaration in support of Defendants' motion to dismiss in which he verified that Bag2Go's luggage

technology is incorporated into Rimowa luggage that does not infringe on the BTG trademark and is, instead, branded and marketed as "Rimowa Electronic Tag." (February 25, 2016 Declaration of Thomas Nelson DE 35-1 ¶¶ 5-7). Finally, Defendants are explicit that the term "Bag2Go does not appear anywhere on the Rimowa luggage being sold in the United States and is not being used in any corresponding marketing materials." (DE 35-1 ¶ 10). Thus, the Court cannot exercise general personal jurisdiction over Bag2Go and Reh under Florida's long-arm statute.

Alternatively, BTG points out that Florida Statute § 48.193(1)(a)(2) provides for specific jurisdiction where the defendant "commit[ed] a tortious act within this state." In *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir.2008), the Court examined whether a Florida court had specific personal jurisdiction under the long-arm statute over a foreign defendant who allegedly infringed the trademark of a Florida citizen on a website created by the defendant in another state. The Court found specific jurisdiction under Fla. Stat. § 48.193(1)(b) (current version at Fla. Stat. § 48.193(1)(a)(2)) because the alleged injury, infringement of a trademark owned by a Florida corporation, occurred in Florida "by virtue of the website's accessibility in Florida." *Id.* at 1283. In a later case involving alleged trademark infringement, *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir.2013), the Court also held that a Florida court had specific personal jurisdiction over the nonresident defendant under Florida Statute § 48.193(1)(a)(2). In *Mosseri*, the defendant was the CEO of a company that owned a website which was "not only accessible" in Florida like the website in *Licciardello*, but also facilitated the sale of allegedly infringing goods to Florida customers. *Id.* at 1354.

■ BTG, relying on *Licciardello*, argues that by committing the torts of trademark infringement and unfair competition, Bag2Go and Reh have caused harm that "even if it occurred out of this State, the resulting injury is felt in this State because Plaintiff and its closely held companies **operate** in South Florida." (DE 27 at 11-12) (emphasis added). However, BTG is a Nevada corporation, has its principal place of business in Las Vegas, and does not itself[3] operate or reside in Florida. (DE 1 ¶ 4; *see also* Declaration of Keith Wiater, DE 27-22 at ¶ 3). Although BTG asserts that "Florida has a strong interest in affording its residents a forum to obtain relief from intentional torts committed by a nonresident which causes injury in Florida" (DE 27 at 13), BTG is not a resident of Florida and has not been injured in Florida; its injury, if any, manifests in Nevada.

Even if BTG were injured in Florida, it is not clear that Bag2Go and Reh's alleged contact with Florida is sufficient for purposes of Florida Statute § 48.193(1)(a)(2). None of Bag2Go or Reh's alleged actions are purposely directed to Florida, and neither Bag2Go nor Reh have purposefully availed themselves of the benefits of Florida. No tortious act within Florida resulted from Bag2Go's appearances at two trade shows in the United States (neither of which BTG alleged was in Florida), Bag2Go's filing of two federal trademark applications for the BAG2GO Mark and for the "suitcase logo," or Bag2Go's filing of a U.S. Patent application for their luggage. (DE 27 at 11-12).

BTG also argues that Bag2Go and Reh committed a tortious act within Florida through "articles written in English and published on the Internet, the Bag2Go twitter feed, the Bag2Go Facebook page promoting their new luggage, [and] their Instagram account #bag2go[.]" (DE 27 at

---

3. BTG's licensees operate in Florida. (See

Declaration of Keith Wiater, DE 27-22 at 3).

11). However, this case is readily distinguishable from other infringement cases in which the Eleventh Circuit found that a defendant's Internet presence warranted specific personal jurisdiction under Florida Statute § 48.193(1)(a)(2). In this case, Bag2Go and Reh's Internet presence consisted of press releases, third-party news coverage, and social media activity. (*See* DE 27 at 11; Declaration of William R. Trueba, Jr., DE 27-1 ¶ 3). None of these are sufficiently analogous to the creation and operation of a website accessible in Florida, *see Licciardello*, 544 F.3d at 1283, or the facilitation of sales of allegedly infringing goods through a website accessible in Florida, *see Mosseri*, 736 F.3d at 1354. Moreover, unlike the plaintiff in *Licciardello*, BTG is not a Florida resident whose rights Florida courts have a heightened interest in protecting. *See Licciardello*, 544 F.3d at 1283 (exercising personal jurisdiction where "the injury from the trademark infringement occurs where the holder of the mark resides—in this case, Florida").

Finally, BTG maintains that Bag2Go and Reh have a business presence in Florida through their agents or alter egos Rimowa US and RD. (DE 27 at 5-6). But there is no indication in the record that Rimowa Defendants have disregarded the corporate form or otherwise acted to bring Bag2Go and Reh within the Court's jurisdiction. The Declarations of Thomas Nelson (DE 21 at 5-12; DE 29-1; DE 35-1) and Jan Reh (DE 21 at 13-22; DE 24-1; DE 29-2; 29-4) make clear that Bag2Go has no clients, business operations, subsidiaries, or agents of any type in the United States. The Complaint also make clear that Bag2Go, RD, and Rimowa US are distinct entities: Bag2Go and Reh are citizens of Germany, while RD and Rimowa US are Delaware corporations with principal places of business in Texas. (DE 1 ¶¶ 5-8). Consequently, the Court does not have personal jurisdiction over Bag2Go and Reh.

### 2. Constitutional Due Process

The Court's exercise of personal jurisdiction would also offend the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. "The Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has 'fair warning' that he may be subject to suit there." *Licciardello*, 544 F.3d at 1284 (citation omitted). However, "[i]ntentional torts ... may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum." *Id.* at 1285 (citing *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). For example, in *Licciardello*, the Court found that the exercise of personal jurisdiction was constitutionally permissible where the defendant created a website accessible in Florida and allegedly used that website to commit an intentional tort against a Florida resident. *Id.* at 1287–88 (citing *Calder*, 465 U.S. at 791, 104 S.Ct. 1482). BTG cites to a similar case, *Warner Brothers Entertainment v. Phillips*, in which a court upheld personal jurisdiction because the defendants "advertised their infringing products for sale on websites accessible in Florida, received orders from at least one Florida consumer, and shipped infringing merchandise to Florida." No. 6:14–cv–1294–Orl–37GJK, 2015 U.S. Dist. LEXIS 98323, at *8 (M.D.Fla. Apr. 30, 2015).

This case differs from *Licciardello* and *Phillips* in two important respects. First, unlike the *Licciardello* and *Phillips* courts, the Court is unable to exercise personal jurisdiction over Bag2Go or Reh under Florida's long-arm statute. Failure to satisfy Florida's long-arm statute is a suffi-

cient ground for the Court to decline to exercise personal jurisdiction. *See Estate of Scutieri v. Chambers*, 386 Fed.Appx. 951, 953 (11th Cir.2010) ("Because we conclude that Florida's long-arm statute does not extend to the defendants' conduct as alleged in the Complaint, we need not evaluate the due process implications.").

Second, even assuming Florida's long-arm statute had been satisfied, BTG does not allege any conduct expressly aimed at Florida such that the Court may exercise personal jurisdiction over Bag2Go and Reh in line with the Due Process Clause of the Fourteenth Amendment. *See Calder v. Jones*, 465 U.S. 783, 789–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (explaining that courts in a forum may exercise personal jurisdiction over foreign defendants where "intentional, and allegedly tortious, actions were expressly aimed" at that forum). The only actions possibly relating to Florida that BTG identifies are Internet press releases, third party news stories, and social media activities. (DE 27 at 11–12). These actions alone are insufficient to support personal jurisdiction. *See Mosseri*, 736 F.3d at 1357 (explaining that creation of an interactive website alone, without actions expressly aimed at Florida, does not give rise to the "purposeful availment" needed to satisfy Constitutional Due Process when courts exercise personal jurisdiction). Unlike the defendants in *Licciardello* and *Phillips*, Bag2Go and Reh's alleged actions do not include the purposeful creation of a website accessible in Florida to commit tortious acts against Florida residents or to sell infringing products to Florida consumers. The Internet presence alleged in BTG's Complaint—some of which is not even directly attributable to Bag2Go or Reh—has not "established such constitutionally significant contact with the state of Florida that [Bag2Go and Reh] could have reasonably anticipated that [they] might be sued here in connection with those activities." *Licciardello*, 544 F.3d at 1284.

### 3. Federal Rule of Civil Procedure 4(k)(2)

 Lastly, BTG argues that a possible basis for personal jurisdiction over Bag2Go and Reh is Federal Rule of Civil Procedure 4(k)(2). That Rule makes clear that it is applicable only where the foreign defendant is not subject to jurisdiction in any state's courts of general jurisdiction. Fed. R. Civ. P. 4(k)(2)(A). In this case, BTG has initiated a parallel proceeding in Nevada. (DE 22). Although the fact of the Nevada lawsuit is irrelevant to a determination of the applicability of Rule 4(k)(2) in this action, the fact that Bag2Go and Reh were served with process by personal service in Nevada, while in that forum at a trade show to promote the allegedly infringing products and mark, is relevant. (DE 22 ¶¶ 7–8).

 When a defendant is personally served within a district, she may be subject to the personal jurisdiction of that forum even if her only contact with the forum state is a one-time visit. So-called "tag jurisdiction" enables a court to exercise personal jurisdiction over nonresidents when that nonresident is served with process while voluntarily present in the state.[4] *See Burnham v. Superior Court of California*, 495 U.S. 604, 619, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) ("[J]urisdiction based on physical presence alone ... is one of the continuing traditions of our legal system that define the due process

---

4. A plaintiff must satisfy the requisites of *Daimler AG v. Bauman* to assert general jurisdiction over a foreign corporation. —— U.S. ——, 134 S.Ct. 746, 757–58, 187 L.Ed.2d 624 (2014) ("Specific jurisdiction has been cut loose from *Pennoyer's* sway, but we have declined to stretch general jurisdiction beyond limits traditionally recognized.").

standard of traditional notions of fair play and substantial justice."). As a Nevada district court explained in *Bravo Co. USA v. Badger Ordnance LLC*, No. 2:14–CV–00387–RCJ, 2015 WL 1326420 (D.Nev. Mar. 25, 2015), due process can be satisfied by personal service on a defendant attending a trade show:

Nevada has adopted the in-state service rule for non-resident defendants. *See* Nev. Rev. Stat. § 14.065(2). The Nevada Supreme Court has held that "[i]t is well-settled that personal jurisdiction may be asserted over an individual who is served with process while present within the forum state." It also noted that "[t]he doctrine of minimum contacts evolved to extend the personal jurisdiction of state courts over non-resident defendants; it was never intended to limit the jurisdiction of state courts over persons found within the borders of the forum state."

2015 WL 1326420, at *3 (case citations omitted); *see also Martinez v. Aero Caribbean*, 764 F.3d 1062, 1069 (9th Cir.2014) (quoting *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1404 n. 8 (9th Cir.1994)) (explaining that "tag service" remains effective on a foreign corporation). In this case, BTG argues that Bag2Go and Reh were at the Nevada trade show specifically to promote infringing BAG2GO-branded luggage and service. (DE 27 at 4; DE 27-22 ¶ 19). In light of the foregoing, and without deciding on the merits regarding jurisdiction in any particular sister court, the Court is satisfied that this Court does not have personal jurisdiction over Defendants Bag2Go and Reh under Rule 4(k)(2).

**B. Failure to State a Claim**

The remaining Rimowa Defendants move to dismiss because the Complaint fails to state a claim on any Count. Rimowa Defendants base this argument on the fact that the Lanham Act's infringement and unfair competition provisions re-quire a defendant to "use in commerce" an infringing mark. The Lanham Act's infringement provision provides:

Any person who shall, without the consent of the registrant ... **use in commerce** any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion ... shall be liable in a civil action by the registrant.

15 U.S.C. § 1114 (emphasis added); *see also N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008) (explaining one element of an infringement action as "defendants' use of the mark occurred 'in commerce[ ]' "). The Lanham Act's unfair competition provision contains similar language:

Any person who, on or in connection with any goods or services, or any container for goods, **uses in commerce** any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which ... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a) (emphasis added).

Rimowa Defendants contend that the Lanham Act specifically defines the term "use in commerce" in § 1127. This section provides that "a mark shall be deemed to be in use in commerce" when "on goods ... sold or transported in commerce" and "on services when it is used or displayed in

the sale or advertising of services and the services are rendered in commerce[.]" 15 U.S.C. § 1127. Thus, Rimowa Defendants argue that to state a Lanham Act claim for infringement or unfair competition, BTG had to allege the type of "use in commerce" contemplated by § 1127—that Rimowa Defendants actually sold or transported goods or rendered services in the United States using the BAG2GO Mark. (DE 24 at 16-18). And because the Complaint makes no such allegations, Rimowa Defendants maintain that dismissal is warranted.

The problem with this argument is that § 1127's definition of "use in commerce" applies only in the trademark qualification context and not in the trademark infringement context. *See Axiom*, 522 F.3d at 1220 n. 7 (a "leading treatise on trademarks notes that § 1127 'defines the kind of use needed to acquire registrable trademarks rights—**not to infringe them'** ") (emphasis added). In *Axiom*, the Eleventh Circuit held that the defendant's use of "meta tags"[5] which infringed the plaintiff's mark was a " 'use in commerce . . . in connection with the sale . . . or advertising of any goods' under the facts of this case." *Id.* at 1220 (alterations in original). In so holding, the Eleventh Circuit expressed hesitation about whether § 1127's definition of "use in commerce" applied in the infringement context, citing McCarthy's treatise on trademarks:

> McCarthy explains that § 1127 harked back to the common law 'affixation' requirement, a formalistic prerequisite to achieving technical trademark status. By contrast, McCarthy observes that § 1114(1) merely requires a plaintiff's proof of infringement establish a use in

commerce "in connection with the sale . . . or advertising of goods."

*Id.* at 1220 n. 7 (citing J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:11.50 (4th ed. 2003)). Although the Eleventh Circuit in *Axiom* did not directly decide whether § 1127's definition of "use in commerce" applies to the Lanham Act's infringement and unfair competition provisions, other Circuits considering the issue have reached conflicting conclusions. *Compare Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 761 n. 2 (8th Cir.2010) (assuming "without holding" that § 1127's "use in commerce" definition applies in infringement context to affirm summary judgment for defendant); *1-800 Contacts Inc. v. Whenu.com, Inc.*, 414 F.3d 400, 409 (2d Cir.2005) (applying § 1127's "use in commerce" definition in the infringement context); *and International Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359, 363–64 (4th Cir.2003) (same), *with Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir.2005) (holding district court's application of § 1127's "use in commerce" definition in the infringement context was incorrect because "use in commerce" is "simply a jurisdictional predicate to any law passed by Congress under the Commerce Clause" and § 1127 is prefaced by language that "unless the contrary is plainly apparent from the context"); *Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 124 (2d Cir.2009) (vacating and remanding district court's dismissal of Lanham Act infringement and unfair competition claims where district court based dismissal on complaint's failure to allege a "use in commerce" under § 1127).[6]

---

**5.** Meta tags are "words and phrases that are intended to describe the contents of a website. These descriptions are embedded within the website's computer code" and that "websites do not display their meta tags to visitors...."

*Axiom*, 522 F.3d at 1216 n. 2 (citation omitted).

**6.** Two cases Rimowa Defendants cite are inapplicable here because those courts applied § 1127's "use in commerce" definition in the

Given the Eleventh Circuit's hesitation in *Axiom*, the Court declines to apply § 1127's definition of "use in commerce" to BTG's infringement and unfair competition claims. Instead, as used in the infringement and unfair competition provisions of the Lanham Act, the Court interprets " 'commerce' broadly for jurisdictional purposes as 'all commerce which may be lawfully regulated by Congress.' " *Axiom*, 522 F.3d at 1218 n.5 (citing 15 U.S.C. § 1127; *Bosley*, 403 F.3d at 677 (describing "use in commerce" as a "jurisdictional predicate"); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194–94 (11th Cir.2001)). "Advertising that affects interstate commerce and solicitation of sales across state lines … is … commerce within the meaning of Lanham Act." *Shatel Corp. v. Mao Ta Lumber & Yacht Corp.*, 697 F.2d 1352, 1356 (11th Cir.1983). Because BTG alleges that Rimowa Defendants have advertised the BAG2GO Mark, "this case satisfies the 'in commerce' jurisdictional requirement under the law of this circuit, which requires only that there be an 'effect' on commerce." *See Rickard v. Auto Publisher, Inc.*, 735 F.2d 450, 453 n. 1 (11th Cir.1984) (citation omitted).

There is no dispute that Rimowa Defendants' alleged advertising of the BAG2GO Mark affects interstate commerce. Instead, Rimowa Defendants advance a more narrow argument that they have not "sold or transported goods with the alleged infringing mark in commerce in the United States." (DE 24 at 17). However, the Court's inquiry as to BTG's infringement claim is whether the Complaint alleges that Rimowa Defendants used an infringing mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services and in a manner likely to confuse consumers. *See Axiom*, 522 F.3d at 1218 (holding that because defendant did not dispute that alleged infringement affected interstate commerce, appropriate inquiry was whether defendants used the mark in connection with the sale or advertising of any goods in a manner likely to confuse consumers). Likewise, as to BTG's unfair competition claim, the Court's inquiry is whether the Complaint alleges that Rimowa Defendants used a confusing word, term, name, symbol, or device in connection with any goods or services in a manner that harmed BTG. See *id.*; 15 U.S.C. § 1125(a).

BTG's Complaint survives these inquiries. The Complaint alleges that Rimowa Defendants issued a press release with Airbus in which they announced their intent to jointly produce a luggage product under the trademark "BAG2GO." (DE 1 ¶ 25). The Complaint also alleges that Rimowa Defendants are producing "co-branded luggage with both the Rimowa and BAG2GO trademarks" and that "RD will be distributing these products in the US." (DE 1 ¶ 38). The Complaint further alleges that the Rimowa Defendants' use of the BAG2GO branding will confuse consumers into thinking their products are "produced by, authorized by, or in some manner associated with or sponsored by BTG" and thereby harm BTG. (DE 1 ¶ 39). Thus, the Complaint states a plausible Lanham Act infringement claim—Rimowa Defendants used the BAG2GO Mark "in connection with the sale, offering for sale, distribution, or advertising" of a luggage product—and a plausible Lanham Act unfair competition claim—Rimowa Defen-

qualification rather than infringement context. *See Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1024 n. 11 (9th Cir.2004) (Section 1127's "use in commerce" definition applies "to the required use a plaintiff must make in order to have rights in a mark"); *Couture v. Playdom, Inc.*, 778 F.3d 1379, 1382 (Fed.Cir.2015) (applying § 1127's definition of "use in commerce" in the qualification context).

dants used the allegedly confusing BAG2GO Mark in connection with a luggage product in a manner that harms BTG. For the same reasons, the Complaint sufficiently sets forth Florida common law infringement and unfair competition claims as well. *See Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003); *Rain Bird Corp. v. Taylor*, 665 F.Supp.2d 1258, 1267 ("The legal standards for Florida statutory and common law claims of trademark infringement and unfair competition ... are the same as those for federal claims of trademark infringement and unfair competition.").

## IV. CONCLUSION

For the reasons above, it is **ORDERED AND ADJUDGED** that Defendants' motion to dismiss Plaintiff's complaint (DE 24) is **GRANTED IN PART AND DENIED IN PART.** Defendants Bag2Go and Reh are **DISMISSED** from the case. The motion for preliminary injunction (DE 6), which requests an injunction only against Defendants Bag2Go and Reh, is **DENIED AS MOOT.** The case proceeds as to Rimowa Defendants. Rimowa Defendants shall answer the Complaint within 21 days of the date of this Order.

**DONE AND ORDERED** in chambers in Miami, Florida, this <u>8th</u> day of June, 2016.