[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 10, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-14086

_____

D.C. Docket No. 07-00137-CV-ORL-28-KRS

CARMAN LICCIARDELLO,

Plaintiff-Appellant,

versus

RENDY LOVELADY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 10, 2008)**

Before BIRCH, DUBINA and HILL, Circuit Judges.

HILL, Circuit Judge:

Carman Licciardello brought this action in the Middle District of Florida against Rendy Lovelady under the Lanham Act for trademark infringement and related claims arising out of Lovelady's allegedly unauthorized use of Licciardello's name, photograph, and apparent endorsement of Lovelady on a website. Lovelady, who resides in Tennessee, filed a Motion to Dismiss for Lack of Personal Jurisdiction, which the district court granted. Licciardello filed a timely notice of appeal. For the following reasons, we shall reverse.

I.

Carman Licciardello ("Carman") has been a nationally-known Christian musician and entertainer for over twenty-five years. From 2000 to 2001, Lovelady was employed by Carman as his personal manager and Lovelady managed Carman's concert tour during that year. The tour had live performances in approximately eighty major cities in the United States, including three or four in Florida. Lovelady accompanied the tour to Florida for those performances.

Under his agreement with Carman, Lovelady received commissions from Carman's gross income derived from catalogue record sales, from Carman's service contracts on specific items, including endorsement and sponsorship contracts, and his master recordings, musical compositions and other activities

2

occurring during the contract. Carman terminated his contract with Lovelady at the end of 2001.

Carman alleges that Lovelady also managed several other artists who performed in Florida during this time period, including one group that performs regularly in Orlando, Florida. Lovelady was in Florida for these performances on three occasions in 2006 and 2007.

Carman alleges that in early 2006, Lovelady posted a website on the Internet that was accessible to the public in Florida that promoted Lovelady as a personal manager for music artists. The website used Carman's trademarked name and his picture, implying that Carman endorsed Lovelady's skill as a personal manager. The website offered CD's for sale that provided management advice and other career assistance.

Carman brought this action asserting trademark infringement by Lovelady. On motion, the district court dismissed the action for lack of personal jurisdiction. We review this dismissal *de novo*. *Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357 (11th Cir. 2006).

## II.

A federal district court in Florida may exercise personal jurisdiction over a nonresident defendant to the same extent that a Florida court may, so long as the

exercise is consistent with federal due process requirements.  *See* Fed. R. Civ. P. 4(e)(1), (h), and (k); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 626-27 (11th Cir. 1996).  If both Florida law and the United States Constitution permit, the federal district court may exercise jurisdiction over the nonresident defendant.  *Id.*

1.     The Florida Long-Arm Statute

The Florida "long-arm" statute permits the state's courts to exercise jurisdiction over nonresident defendants who commit certain specific acts.  Fla. Stat. § 48.193.  For example, § (1)(b) of the statute permits a Florida court to assert jurisdiction over any person who "commit[s] a tortious act within this state." Fla. Stat. § 48.193(1)(b).

Carman claims that jurisdiction over then nonresident Lovelady is appropriate under this section of the Florida statute.  Carman argues that Lovelady's creation in Tennessee of a website containing an allegedly infringing and deceptive use of Carman's trademark is a tortious act "within this state" as contemplated by the statute because the injury from trademark infringement occurs where the holder of the mark resides – in this case, Florida.  He relies upon *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1231 (M.D. Fla. 2000) (allegation of trademark infringement of Florida resident sufficient to trigger Florida long-arm statute).  *Accord JB Oxford Holdings, Inc. v. Net Trade, Inc.*, 76 F. Supp. 2d 1363,

4

1368 (S.D. Fla. 1999). Lovelady's response to this argument is limited to the contention that he did not commit any tort because he did not actually create the website; his employee did. He does not address the cases cited by Carman, nor make any argument about where the injury from the tort occurred, if there was one.

We have held that §48.193(b) of the Florida long-arm statute permits jurisdiction over the nonresident defendant who commits a tort outside of the state that causes injury inside the state. *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1216 (11th Cir. 1999) (adopting broad interpretation of long-arm statute by Florida courts that permits personal jurisdiction over nonresident defendant alleged to have committed a tort causing injury in Florida). Therefore, although the website was created in Tennessee, the Florida long-arm statute is satisfied if the alleged trademark infringement on the website caused injury in Florida.

We need not decide whether trademark injury necessarily occurs where the owner of the mark resides, as the Florida district courts have held, because in this case the alleged infringement clearly also occurred in Florida by virtue of the website's accessibility in Florida.[1] On motion to dismiss, and under our precedent,

---

[1] Even under the alternative rule, that the injury occurs where the mark was "passed off," injury would occur in Florida as the website is alleged to have been accessible in Florida. *Cf. Vanity Fair Mills v. T. Eaton Co..*, 234 F.2d 633, 639 (2d Cir. 1956); *Tefal, S.A. v. Prods. Int'l*

then, Carman's allegations in the complaint are sufficient to invoke the Florida long-arm statute.[2]

Having determined that the Florida long-arm statute authorizes jurisdiction over Lovelady, we must address whether the due process clause of the United States Constitution permits the statute to be employed in this case.

2.      Constitutional Due process

Even though a statute may permit a state to assert jurisdiction over a nonresident defendant, the due process clause of the United States Constitution protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties, or relations." *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). The Constitution prohibits the exercise of personal jurisdiction over a nonresident defendant unless his contact with the state is such that he has "fair warning" that he may be subject to suit there. *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment). This "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 774 (1984), and the litigation

_____

*Co.*, 529 F.2d 495, 496 n.1 (3d Cir. 1976).

[2]Because the court holds that Fla. Stat. § 48.193(1)(b) is satisfied, we do not address Carman's assertions that jurisdiction lies under other sections of the statute as well.

6

results from alleged injuries that "arise out of or relate to" those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). In this way, the defendant could have reasonably anticipated being sued in the forum's courts in connection with his activities there. *Burger King*, 471 U.S. at 472 (quoting *International Shoe*, 326 U.S. at 316).

Even where a defendant has purposefully established constitutionally significant contacts within the forum state, jurisdiction must also be evaluated in light of several other factors to determine whether its exercise would comport with "fair play and substantial justice." *International Shoe*, 326 U.S. at 320. These factors include the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Where these factors do not militate against otherwise permitted jurisdiction, the Constitution is not offended by its exercise. *Id.*

Therefore, in order to determine whether the due process clause permits the exercise of personal jurisdiction over Lovelady, we must assess whether he has purposefully established such constitutionally significant contact with the state of Florida that he could have reasonably anticipated that he might be sued here in

7

connection with those activities. If so, we must consider whether the forum's interest in this dispute and the plaintiff's interest in obtaining relief are outweighed by the burden on the defendant of having to defend himself in a Florida court.

A.      *Lovelady's contacts with Florida*

Lovelady maintains that he has no constitutionally significant contacts with Florida. He has no office, no agents, no employees or property in Florida. His sporadic travel to Florida in connection with his management of Carman and other music groups, he argues, is both constitutionally insufficient and unrelated to this cause of action.[3]  Although apparently conceding that his website is related to Carman's claim,[4] Lovelady contends that it not a sufficient contact upon which to

_____

[3]It is unclear whether Lovelady's travel to Florida and income from his management of several music groups that have performed in Florida are related to Carman's claim for trademark infringement on the website. We note, however, that it is not enough that there be some *similarity* between the activities that connect the defendant to the forum and the plaintiff's claim. Rather, the plaintiff's claim must "arise out of" the defendant's contacts with the forum. *Burger King*, 471 U.S. at 474 n.15. The Sixth Circuit has said that "[i]f a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996). In *Madara v. Hall*, 916 F.2d 1510, 1516 (11th Cir. 1990), we rejected a similar claim that a defendant's visits to Florida for concert performances and the sale of his records in Florida were related to the activity for which he was being sued – libel. Under this test, Carman's trademark infringement claim may not "arise" out of Lovelady's travel to Florida and management of groups performing here. In any event, we do not reach this question because we decide the case based upon Lovelady's website contact in Florida.

[4]Although Lovelady does not discuss whether the website and Carman's claim are related, it is clear that they are inasmuch as the website is the location of the offending trademark use.

8

predicate personal jurisdiction in Florida.[5]

As we have discussed above, the constitutional litmus test for personal jurisdiction is whether the defendant "purposefully established 'minimum contacts' in the forum State.'" *Burger King*, 471 U.S. at 473-74 (quoting *International Shoe*, 326 U.S. at 316). Jurisdiction may be constitutionally asserted over the nonresident defendant whenever he has by his own purposeful conduct created a "substantial connection" with the forum state. *Id.* at 475. The Court has made clear, however, that "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Id.* (quoting *McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223 (1984)).

Intentional torts are such acts, and may support the exercise of personal jurisdiction over the nonresident defendant who has no other contacts with the forum. *Calder v. Jones*, 465 U.S. 783, 790 (1984). In *Calder*, a California

---

*See JB Oxford*, 76 F. Supp. 2d at 1367 (use of mark on website accessible in Florida related to cause of action for infringement of Florida resident's trademark).

[5]Lovelady also argues that the website was never fully functional nor advertised and never generated any income. Carman alleges in the complaint and proffers an affidavit attesting that he accessed the website in Florida over several weeks, to which is attached a printout of the offending material on the website. On motion to dismiss, this affidavit suffices to require the court to accept as true that the website was operational and available to the public at large. *See Madara*, 916 F.2d at 1516 (district court must accept the facts alleged in complaint as true to extent they are uncontroverted by defendant's affidavits). Of course, we express no opinion on the merits, *i.e.*, whether the use of the trademark on the temporary website was sufficient to constitute an infringement.

plaintiff sued a Florida newspaper and two of its employees in California state court based on an allegedly libelous article about the plaintiff. *Id.* In affirming jurisdiction, the Court noted that the nonresident employees' article was not "untargeted negligence," but rather an "intentional and allegedly tortious act" expressly aimed at the plaintiff in the forum state because the defendants knew their article would have a potentially devastating impact on the California plaintiff. *Id.* at 789-90. The defendants knew that the "brunt of the harm" to plaintiff's reputation would be suffered in California. Thus, California was the focal point of the tort and jurisdiction was proper there based on the "effects" in California of defendants' Florida conduct. *Id.* at 789. The Supreme Court concluded that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Id.* at 790.

Similarly, in *Keeton*, decided the same day as *Calder*, the Court emphasized that states have a special interest in exercising jurisdiction over those who commit intentional torts causing injury to their residents. 465 U.S. at 776-77. In *Keeton*, the Court affirmed the exercise of jurisdiction over the nonresident defendant magazine alleged to have intentionally libeled the plaintiff in the forum. *Id.*

Many courts have employed the *Calder* "effects" test when the plaintiff's

claim involves an intentional tort. The Seventh Circuit upheld the exercise of personal jurisdiction in a trademark infringement action by the Indianapolis Colts football team against a nonresident Canadian football team, also calling themselves the "Colts." *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. Partnership*, 34 F.3d 410 (7th Cir. 1994). The Seventh Circuit held that the Canadian team was subject to personal jurisdiction in Indiana even though its only activity directed toward Indiana was the broadcast of its games on nationwide cable television. *Id.* Because the Colts used their trademarks in Indiana, the court reasoned that the intentional injury to them by the Canadian team's exploitation of their name was sufficient to permit jurisdiction in Indiana. *Id.*

Similarly, the Ninth Circuit has recognized that the defendant's connection with the forum in an intentional tort case should be evaluated under the *Calder* "effects" test, rather than the contracts-oriented "minimum contacts" test. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). In *Ziegler*, the court noted that:

> We apply different purposeful availment tests to contract and tort cases. . . . Consistent with the Supreme Court's holding in *Burger King*, merely contracting with a resident of the forum state is insufficient to confer specific jurisdiction over a nonresident. In tort case, however, jurisdiction may attach if an out-of-forum defendant

11

merely engages in conduct aimed at, and having effect in, the situs state.

64 F.3d at 473 (citing *Core Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1486 (9ᵗʰ Cir. 1993). The court formulated the *Calder* test for personal jurisdiction as requiring a tort that was (1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state. *Id.* at 474 (affirming the exercise of jurisdiction over nonresident defendants alleged intentionally to have caused a false arrest).[6]

Similarly, in *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321-22 (9ᵗʰ Cir. 1998), the Ninth Circuit affirmed the exercise of jurisdiction in a trademark infringement action over a nonresident defendant whose sole contact with the forum was his posting of plaintiff's trademarks on his internet website. *Id.* The court found that the defendant knew that "the brunt of the harm to Panavision" would be felt in California where Panavision had its principal place of business. *Id.*[7] Although noting that the mere posting of an infringing trademark on a website

---

[6]Mere negligent use of an infringing mark would not satisfy the *Calder* test. 465 U.S. at 788-90. Under the effects test, acts expressly aimed by the defendant at an individual in the forum may result in personal jurisdiction over the defendant, but mere untargeted action or a fortuitous result will not. *Id.*

[7]In *Canseco, Inc. v. Hickerson*, 698 N.E. 2d 816, 819 (Ind. App. 1998) the Indiana state court declined to permit jurisdiction under the effects test in a trademark infringement action where the plaintiff was a national corporation, reasoning that the corporation's injury is not located in a particular geographic location as an individual's harm would be. Use of the test in

"without more" might not be sufficient to demonstrate that the defendant purposefully aimed his activity toward the forum state, the court found that the defendant's use of Panavision's trademarks as his domain name on the internet was an attempt to extort payment from Panavision for the names and that this intentional conduct was sufficient to permit jurisdiction. *Id.* at 1321.

In a recent case, the Ninth Circuit explained that "something more" is required under *Calder* than the mere "forseeability" that an act may have effects in the forum, and concluded that *Calder* requires that the defendant "expressly aim" his wrongful conduct, individually targeting a known forum resident. *Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). When the nonresident defendant targets a forum resident and injures him there, the court held, the defendant cannot complain when he is haled into court there. *Id.* at 1087.

Recently the Middle District of Florida recognized that "a number of courts" have held that "where a defendant's tortuous conduct is intentionally and purposefully directed at a resident of the forum, the minimum contacts requirement is met, and the defendant should anticipate being haled into court in

---

such a case would expose the defendant to suit throughout the nation, according to the state court, resulting in an "unsuitable" result. Of course, where the plaintiff is an individual, the injury is suffered where the plaintiff resides. *JB Oxford*, 76 F. Supp. 2d at 1368.

that forum." *New Lennox Industries v. Fenton*, 510 F. Supp. 2d 893, 904 (M.D. Fla. 2007). In that case, the plaintiff had alleged fraud and misappropriation of trade secrets, and the district court held that jurisdiction was proper inasmuch as "Plaintiff alleges that Defendants committed one or more intentional torts . . . against Plaintiff who was injured in Florida. *Id.* at 904-05 (citing *Godfrey v. Neuman*, 373 So. 2d 920, 922 (Fla. 1979) (Florida Supreme Court similarly applied the effects test to find jurisdiction over the defendant alleged to have committed an intentional tort).

Finally, in *Allerton v. State Department of Insurance*, 635 So. 2d 36 (Fla. 1st DCA 1994), a Florida appellate court rejected an argument that neither the Florida long-arm statute nor the Constitution permitted the exercise of jurisdiction over a nonresident alleged to have committed fraud and breach of fiduciary duty causing injury in Florida, stating "[w]e do not believe that the supreme court [of Florida] intended . . . to deprive a Florida plaintiff, injured by the intentional misconduct of a nonresident corporate employee expressly aimed at him, of the right to obtain personal jurisdiction over that employee in a Florida court." *Id.* at 40. The court held that, because the defendant was alleged to have committed numerous intentional torts specifically aimed at a Florida resident, due process was satisfied under the *Calder* effects test. *Id.* The court concluded that the "quality and nature

14

of [the defendant's] actions were not so 'random, fortuitous or attenuated" that [he] could not reasonably anticipate being haled into court in Florida." *Id.*

In this case, Lovelady is alleged to have committed an intentional tort against Carman – using his trademarked name and his picture on a website accessible in Florida in a manner to imply Carman's endorsement of Lovelady and his products. The use was not negligent, but intentional. The purpose was to make money from Carman's implied endorsement. The unauthorized use of Carman's mark, therefore, individually targeted Carman in order to misappropriate his name and reputation for commercial gain. These allegations satisfy the *Calder* effects test for personal jurisdiction – the commission of an intentional tort, expressly aimed at a specific individual in the forum whose effects were suffered in the forum. The Constitution is not offended by the exercise of Florida's long-arm statute to effect personal jurisdiction over Lovelady because his intentional conduct in his state of residence was calculated to cause injury to Carman in Florida. *See Calder*, 465 U.S. at 791. Lovelady cannot now claim surprise at being haled into court here. *See id.* at 789-90.[8]

---

[8]We do not, by our decision today, intend to establish any general rule for personal jurisdiction in the internet context. Our holding, as always, is limited to the facts before us. We hold only that where the internet is used as a vehicle for the deliberate, intentional misappropriation of a specific individual's trademarked name or likeness and that use is aimed at the victim's state of residence, the victim may hale the infringer into that state to obtain redress for the injury. The victim need not travel to the state where the website was created or the

B.    *Fair Play and Substantial Justice*

Having established that Lovelady has a constitutionally sufficient contact with Florida, we must ascertain whether the exercise of jurisdiction over him comports with fair play and substantial justice. *International Shoe*, 326 U.S. at 320. Relevant factors include the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute. *World-Wide Volkswagen*, 444 U.S. at 292.

In this case, the Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy. The Supreme Court in *Calder* made clear that "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." 465 U.S. at 1487.

Additionally, Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida. *Allerton*, 635 So. 2d at 40; *Sculptchair, Inc. v. Century Arts, Ltd*. 94 F.3d 623, 632 (11ᵗʰ Cir. 1996). The Constitution is not offended by Florida's

infringer resides to obtain relief.

16

assertion of its jurisdiction over such nonresident tortfeasors. *Calder*, 465 U.S. at 1487.

IV.

For the foregoing reasons, we reverse the district court's grant of the motion to dismiss for lack of personal jurisdiction and remand for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.