ROY B. DALTON JR., United States District Judge
Before the Court is Defendants' Motion to Dismiss and Supporting Memorandum of Law (Doc. 22 ("Motion ") ), and Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. 28). For the following reasons, the Motion is due to be denied.
*1345 I. BACKGROUND
On August 31, 2015, Defendants Transamerica Financial Advisors, Inc. ("TFA "), World Financial Group, Inc. ("WFG "), World Financial Group Insurance Agency, Inc. ("WFGIA ") and John Does 1-5 (collectively, "Defendants "), sent an unsolicited facsimile advertisement to Plaintiff ("Fax "). (See Doc. 1, ¶¶ 2, 12, 14, 21, 30, 35; see also Doc. 1-2.) Defendants allegedly sent the Fax and other unsolicited faxes to Plaintiff and at least forty other recipients without first receiving the recipients' express invitation or permission or the required opt-out language as required by Telephone Consumer Protection Act of 1991 ("TCPA "). (Id. ¶ 15.)
Plaintiff initiated this putative class action against Defendants, alleging violations of the TCPA, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227. (Id. ¶¶ 1-2.) Defendants now move for dismissal for lack of subject matter jurisdiction, failure to state a claim, and lack of personal jurisdiction, under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(2), respectively. (Id. ) As the matter is fully briefed (Doc. 28), it is now ripe.
II. THE TCPA
The TCPA prohibits "any person within the United States ... [from] us[ing] any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine" ("Fax Provision "). See 47 U.S.C. § 227(b)(1)(C). The TCPA creates a private right of action to obtain injunctive relief and to recover actual or statutory damages for each violation of the Fax Provision. See 47 U.S.C. § 227(b)(3). Against this legal framework, the Court addresses each of Defendants' grounds for dismissal.
III. 12( B )(1) MOTION
A. Legal Standard
Standing to bring and maintain a lawsuit is fundamental to invoking a federal court's subject matter jurisdiction. DaimlerChrysler Corp. v. Cuno , 547 U.S. 332, 340-42, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). Attacks on subject matter jurisdiction, including a plaintiff's standing, comes in two forms: facial attacks and factual attacks. Lawrence v. Dunbar , 919 F.2d 1525, 1528-29 (11th Cir. 1990). Under a facial attack, a court examines whether the plaintiff has sufficiently alleged a basis for subject matter jurisdiction and accepts the allegations of the complaint as true. McElmurray v. Consol. Gov't of Augusta-Richmond Cty. , 501 F.3d 1244, 1251 (11th Cir. 2007) (noting that under a Rule 12(b)(1) facial attack a plaintiff has "safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised").
B. Analysis
Defendants first facially attack Plaintiff's standing to sue under the TCPA. (Doc. 28, pp. 6-8.) To establish constitutional standing, a plaintiff must plausibly allege: (1) injury-in-fact; (2) causation; and (3) redressability. Spokeo, Inc. v. Robins , --- U.S. ----, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). Defendants challenge the first element. Specifically, Defendants posit that the Complaint fails to allege facts that: (1) Plaintiff "actually received the Fax"; and (2) "someone at Tickling Keys actually printed the Fax or used any toner or paper." ( Id. )
Contrary to Defendants' argument, Plaintiff has sufficiently alleged an injury-in-fact. In the TCPA context, a plaintiff sufficiently pleads a concrete, particularized, and personal injury where facts allege that "the plaintiff's fax machine is occupied while the unsolicited fax is being sent and the plaintiff must shoulder the cost of printing the unsolicited *1346 fax." Florence Endocrine Clinic, PLLC v. Arriva Med., LLC , 858 F.3d 1362, 1366 (11th Cir. 2017) ; see also Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A. , 781 F.3d 1245, 1252-53 (11th Cir. 2015). Even a single unsolicited fax may constitute a "concrete and personalized injury in the form of the occupation of [the recipient's] fax machine for the period of time required for the electronic transmission of the data." Sarris , 781 F.3d at 1251.
Plaintiff has satisfied this standard. The Complaint alleges that: (1) "Defendants sent the [Fax], on or about August 31, 2015, via facsimile transmission from telephone facsimile machines, computers or other devices to the telephone lines and facsimile machines of Plaintiff and members of the Plaintiff Class" (Doc. 1, ¶ 30); (2) Plaintiff printed the Fax (see id. ¶ 34); and (3) Plaintiff's fax machine was occupied for a period of time (id. ¶ 35). So Plaintiff has sufficiently alleged an injury-in-fact and the Court rejects this basis for dismissal.
IV. 12( B )(6) MOTION
A. Legal Standard
Under the minimum pleading requirements of the Federal Rules of Civil Procedure, plaintiffs must provide short and plain statements of their claims with simple and direct allegations set out in numbered paragraphs and distinct counts. See Fed. R. Civ. P. 8(a), 8(d), & 10(b). If a complaint does not comport with these minimum pleading requirements, it is plainly barred; or, if it otherwise fails to set forth a plausible claim, then it may be dismissed under Rule 12(b)(6). See Ashcroft v. Iqbal , 556 U.S. 662, 672, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing Bell Atl. Corp. v. Twombly , 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). Plausible claims must be founded on sufficient "factual content" to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Iqbal , 556 U.S. at 679, 129 S.Ct. 1937.
In assessing the sufficiency of factual content and the plausibility of a claim, courts may consider only: (1) the allegations of the complaint; (2) the exhibits attached to the complaint; (3) documents that are undisputed and central to plaintiffs' claim; and (4) matters subject to judicial notice. See Reese v. Ellis, Painter, Ratterree & Adams, LLP , 678 F.3d 1211, 1215-16 (11th Cir. 2012). Courts must: (1) disregard conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; (2) accept the truth of well-pled factual allegations; and (3) view well-pled facts in the light most favorable to the plaintiffs. See Iqbal , 556 U.S. at 679, 129 S.Ct. 1937.
B. Analysis
Defendants argue that the Complaint should be dismissed under Rule 12(b)(6) because Plaintiff fails to allege sufficient facts to state a cognizable TCPA claim. (See Doc. 22, pp. 9-13.) Defendants' arguments miss the mark. To state a claim for violation of the Fax Provision of TCPA, courts require a plaintiff to allege that: (1) the defendant sent the fax to a telephone facsimile machine using a telephone facsimile machine, computer, or other device; (2) the fax was an advertisement;[1] and (3) the fax was unsolicited. See, e.g., *1347 Daisy, Inc. v. Pollo Operations, Inc. , No. 2:14-cv-564-FtM-38CM, 2015 WL 1418607, at *3 (M.D. Fla. Mar. 27, 2015) (citing 47 U.S.C. § 227(b)(1)(C) ).
Here, the Complaint alleges that Defendants used a telephone facsimile machine to send the Fax to the telephone lines and facsimile machines of Plaintiff and the putative class. (Doc. 1 ¶¶ 2, 12, 21, 30, 31, 35; see also Doc. 1-2). The Complaint also alleges that the Fax advertises products, goods, and services from which Defendants' derive revenue. (Doc. 1, ¶ 13; see also Doc. 1-2). Finally, Plaintiff maintains that Defendants sent the Fax to it and the putative class without permission or without requisite opt-out language. (Doc. 1, ¶¶ 14, 15, 21, 30, 35). Accepting these allegations as true, Plaintiff has pled sufficient facts to survive dismissal under Rule 12(b)(6).[2]
Defendant also urges the Court to dismiss Plaintiff's "class allegations" under Rule 12(b)(6) because they fail to support a putative class action. (Doc. 22, pp. 13.) Such an argument is premature. Dismissing class allegations at the pleading stage is the functional equivalent of denying class certification. See Herrera v. JFK Med. Ctr. Ltd P'Ship , 648 Fed.Appx. 930, 934 (11th Cir. 2016). Although there may be cases where the propriety of class certification is apparent from the Complaint, "the pleadings alone are often not sufficient to establish whether class certification is proper, and the district court will need to go beyond the pleadings and permit some discovery ... to determine whether a class may be certified." Mills v. Foremost Ins. Co. , 511 F.3d 1300, 1309 (11th Cir. 2009) ; see also MRI Assocs. of St. Pete, Inc. v. State Farm Mut. Auto. Ins. Co. , 755 F.Supp.2d 1205, 1207 (M.D. Fla. 2010). Here, the propriety of class certification is not apparent from the Complaint. So the Court declines to dismiss the class allegations at this stage. See Arkin v. Innocutis Holdings , 188 F.Supp.3d 1304, 1312 (M.D. Fla. 2016) (denying the defendant's motion to strike or dismiss class allegations in a TCPA action because it was premature).
V. 12( B )(2) MOTION
A. Legal Standard
Under Rule 12(b)(2), a party may seek dismissal for lack of personal jurisdiction. To establish personal jurisdiction over a nonresident defendant, a plaintiff "initially need only allege sufficient facts to make out a prima facie case of jurisdiction." Posner v. Essex Ins. Co., Ltd. , 178 F.3d 1209, 1214 (11th Cir. 1999). If unrefuted, the Court accepts the well-pled facts as true. Id. at 1215. If, however, the defendant submits non-conclusory declarations refuting the well-pled jurisdictional facts, then the burden "shifts back to the plaintiff to produce evidence supporting jurisdiction."
*1348 Louis Vuitton Malletier, S.A. v. Mosseri , 736 F.3d 1339, 1350 (11th Cir. 2013). If the record evidence conflicts, the Court must "construe all reasonable inferences in favor of the plaintiff." Meier ex rel. Meier v. Sun Int'l Hotels, Ltd. , 288 F.3d 1264, 1269 (11th Cir. 2002).
B. Analysis
WFG and WFGIA-both non-Florida corporations-seek dismissal of the claims against them contending that the Court lacks personal jurisdiction over them.[3] (Doc. 22, pp. 15-17; Doc. 1, ¶¶ 9, 10.) Where, as here, jurisdiction is based on a federal question arising under a statute silent regarding service of process, Rule 4(e) requires a court to look to the state law to determine the existence of personal jurisdiction. Sculptchair, Inc. v. Century Arts, Ltd. , 94 F.3d 623, 626-27 (11th Cir. 1996) ; see also Keim v. ADF MidAtlantic, LLC , 199 F.Supp.3d 1362, 1367 (S.D. Fla. 2016) (noting that the TCPA is silent on service of process).
The Court, therefore, employs a two-part inquiry to determine whether it has personal jurisdiction over nonresident Defendants WFG and WFGIA: (1) whether the forum state's long-arm statute authorizes an exercise of personal jurisdiction; and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment. Louis Vuitton , 736 F.3d at 1350.
1. Long-arm statute
Florida's long-arm statute authorizes an exercise of specific personal jurisdiction where a claim arises from a defendant's commission of "a tortious act within this state."[4] Fla. Stat. § 48.193(1)(a)(2). Courts have held that TCPA violations are tortious acts for purposes of the long-arm statute. See, e.g., Bagg v. USHealth Grp., Inc., No. 6:15-cv-1666-Orl-37GJK, 2016 WL 1588666, at *3 (M.D. Fla. Apr. 20, 2016) (holding that "[s]ending a fax in violation of the TCPA constitutes a tort"). Under Florida law, a defendant commits a tortious act "by making telephonic, electronic, or written communications into [Florida], provided that the tort alleged arises from such communications." Wendt v. Horowitz , 822 So.2d 1252, 1253 (Fla. 2002) ; see also Licciardello v. Lovelady , 544 F.3d 1280, 1283 (11th Cir. 2008) (interpreting Florida long-arm statute regarding commission of a tort to permit "jurisdiction over nonresident defendant who commits a tort outside of the state that causes injury *1349 inside the state").[5] Thus, Florida's long-arm statute is satisfied on a TCPA claim that arises from a non-resident defendant sending a fax into Florida. See, e.g., Keim , 199 F.Supp.3d at 1367.
Here, the Complaint adequately alleges that all Defendants sent the Fax to Plaintiff-a Florida corporation, with its principal place of business in Merritt Island, Florida-in violation of the TCPA. (Doc. 1, ¶¶ 8, 30, 34.) The Complaint also adequately alleges that Defendants' transmission of the Fax caused Plaintiff to suffer injuries including the occupation of its telephone lines and facsimile machine. (See id. ¶¶ 16, 35.) Hence the Court may exercise specific personal jurisdiction over WFG and WFGIA. See Bagg, 2016 WL 1588666, at *3-4 (finding that the Court could exercise specific personal jurisdiction over a nonresident defendant for sending a Fax injuring Plaintiff in Florida). Having satisfied the first step, the Court turns to the due process requirements.
2. Due process
To determine whether exercising specific personal jurisdiction comports with due process, courts employ a three-part test, which examines:
(1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum [ ("Relatedness Prong ") ]; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws [ ("Purposeful Availment Prong ") ]; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice [ ("Fair Play Prong ") ].
Louis Vuitton , 736 F.3d at 1355 (citation omitted). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." Id.
Based on the Complaint, the Relatedness Prong is easily met. This requires a "direct causal relationship between the defendant, the forum, and the litigation," Fraser v. Smith , 594 F.3d 842, 850 (11th Cir. 2010), which Plaintiff shows here by alleging that its TCPA claim arises out of Defendants sending the Fax to it in Florida, (see Doc. 1, ¶¶ 8, 15, 30). Hence, the Relatedness Prong is satisfied. See Louis Vuitton , 736 F.3d at 1355.
Regarding the Purposeful Availment Prong, because this case involves an intentional tort, there are two applicable tests to determine whether purposeful availment has occurred: (1) the "effects test" articulated in Calder v. Jones , 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) ; or (2) a traditional purposeful availment analysis. See Louis Vuitton , 736 F.3d at 1356-57. Under the Calder effects test, a nonresident defendant's tort must have been: "(1) intentional; (2) aimed at the forum state; and (3) caused harm that the defendant should have anticipated would *1350 be suffered in the forum state." Lovelady , 544 F.3d at 1286. Here, the allegations provide that Defendants intentionally sent the Fax to Plaintiff in Florida. (See Doc. 1, ¶¶ 2, 8, 12, 21, 30, 35.) By sending the Fax to Plaintiff, WFG and WFGIA aimed their tortious conduct at Florida, so they should have anticipated that any resulting injuries would occur in this state. The Court therefore finds that under the effect test, Plaintiff has satisfied the Purposeful Availment Prong.[6]
The Court concludes that the Fair Play Prong is also satisfied. In so concluding, the Court considered:
(a) the burden on the defendant, (b) the forum State's interest in adjudicating the dispute, (c) the plaintiff's interest in obtaining convenient and effective relief, (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (e) the shared interest of the several States in furthering fundamental social policies.
McGow v. McCurry , 412 F.3d 1207, 1216 (11th Cir. 2005) (citation omitted).
First, there is no indication that adjudicating this case in Florida would be unconstitutionally burdensome for WFG and WFGIA. Second, "Florida has a very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida." Lovelady , 544 F.3d at 1288. Third, Plaintiff has an interest in obtaining relief in Florida, where its alleged injuries occurred. See id. (explaining that a "plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy"). Last, the Court cannot conceive of any interest of the interstate judicial system in obtaining the most efficient resolution of controversies, or any interest of the states in furthering shared substantive policies thwarted by this decision. With this, the Court finds it may exercise personal jurisdiction over WFG and WFGIA.
3. Class allegations
In a last ditch effort, Defendants argue that the Court lacks personal jurisdiction over WFG and WFGIA regarding the putative class because "[t]he class definition includes 'all persons' who 'were sent telephone facsimile messages' and is therefore not limited to putative members who were sent faxes in Florida." (Doc. 22, pp. 18-19.) As support, Defendants' chiefly rely on Bristol-Myers Squibb Company v. Superior Court of California, San Francisco County , --- U.S. ----, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017). Defendants' interpretation of Bristol-Myers is twice flawed.
First, Bristol-Myers was not a class action; rather, it was a multi-plaintiff products liability action originally filed in California State court that named both resident and non-resident plaintiffs. Id. at 1778. The U.S. Supreme Court left open "the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." Id. at 1784. Second, the holding of Bristol-Myers addressed mass tort actions. The applicability of *1351 Bristol-Myers in the class-action setting is still an open question. See id. at 1789 (Sotomayor, J., dissenting) (explaining that the Bristol-Myers opinion did not "confront the question whether its opinion ... would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured [in that forum]"). For purposes of personal jurisdiction, this distinction is meaningful. See, e.g., Fitzhenry-Russell, et al. v. Dr. Pepper Snapple Grp., Inc. , No. 17-cv-00564-NC, 2017 WL 4224723, at *5 (N.D. Cal. Sept. 22, 2017).
"In a mass tort action, like the one in Bristol-Myers , each plaintiff is a real party in interest to the complaints, meaning that they were named as plaintiffs in the complaints." Id. By contrast, in a putative class action, "one or more plaintiffs seek to represent the rest of the similarly situated plaintiffs, and the 'named plaintiffs' are the only plaintiffs actually named in the complaint." Id. (citing Fed. R. Civ. P. 23 ). So the Court declines to extend Bristol-Myers to the class action context. See, e.g., Fitzhenry-Russell , 2017 WL 4224723, at *4 (declining to extend Bristol-Myers to a class action at the motion to dismiss stage); In re Chinese-Manufactured Drywall Prods. Liability Litig. , No. 09-2047, 2017 WL 5971622, at *12-13 (E.D. La. Nov. 30, 2017) (same). Hence the Motion is due to be denied on this ground.
VI. CONCLUSION
Accordingly, it is ORDERED AND ADJUDGED that Defendants' Motion to Dismiss and Supporting Memorandum of Law (Doc. 22) is DENIED .
DONE AND ORDERED in Chambers in Orlando, Florida, on April 3, 2018.

The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

To the extent Defendants find fault with the Complaint because it contains allegations based on "information and belief," this argument is meritless. (Doc. 22, p. 7.) The Twombly plausibility standard does not preclude pleading facts alleged "upon information and belief" where that belief is "based on factual information that makes the inference of culpability possible." See, e.g., SCOMA Chiropractic, P.A. v. Jackson Hewitt Inc. , No. 2:17-cv-24-FtM-38CM, 2017 WL 6317180, at *3 (M.D. Fla. Dec. 11, 2017) (internal quotations and citations omitted). Plaintiff has alleged enough factual information for the Court to draw a favorable inference concerning Defendants' alleged culpability.

TFA concedes that it has offices and officers located in Florida, but "expressly reserves and does not waive its defense that the Court lacks personal jurisdiction over [it]." (Doc. 22, p. 16, n. 14). TFA's position is foreclosed by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 12(h)(1) (setting forth waiver of Rule 12(b) defenses); 12(g)(2) (foreclosing opportunity to bring a second motion based on a defense that was available to a party but omitted in an earlier motion). So TFA has waived the defense of lack of personal jurisdiction.

Florida's long-arm statute "provides for both specific and general jurisdiction." Louis Vuitton , 736 F.3d at 1352 (citing Fla. Stat. § 48.193(1) -(2) ). "General personal jurisdiction exists when a defendant 'is engaged in substantial and not isolated activity within this state ... whether or not the claim arises from that activity.' " Id. (quoting § 48.193(2) ). Specific jurisdiction, on the other hand, "authorizes jurisdiction over causes of action arising from or related to the defendant's actions within Florida and concerns a nonresident defendant's contacts with Florida only as those contacts related to the plaintiff's cause of action." Id. (citation omitted).

Lovelady analyzed an previous version of the statute, where the tortious acts provision was codified at Florida Statute § 48.193(1)(b). 544 F.3d at 1283. In 2013, the Florida Legislature amended the statute and moved the tortious act provision to its present location at § 48.193(1)(a)(2). See Laws 2013, c. 2013-164, § 1, (July 1, 2013). This amendment did not alter the language of the provision or the substance of it. See Louis Vuitton , 736 F.3d at 1353 n. 7.

The Eleventh Circuit has also applied the traditional minimum contacts test in intentional tort cases. See, e.g., Sec.Exchange Comm'n v. Carrillo , 115 F.3d 1540, 1542 (11th Cir. 1997). But the Court is not required to apply both tests and finds it unnecessary to do so here. See Lovelady , 544 F.3d at 1286-88 (discussing both tests but applying only the Calder "effects" test).